UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MYRON J. KIMBLE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV2068 CDP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

Petitioner Myron J. Kimble brings this case under 28 U.S.C. § 2255, seeking to

vacate, set aside, or correct his sentence.  Kimble was sentenced to 319 months'

imprisonment, followed by a five-year term of supervised release, after he pled guilty to

interfering with interstate commerce by threats or violence, kidnapping, and two firearm

crimes.  Criminal Case No. 4:10CR630 CDP.  He appealed his sentence, and the Eighth

Circuit Court of Appeals affirmed.  *United States v. Kimble*, Case No. 11-2965 (8th Cir.

Feb. 2, 2012).

As grounds for his § 2255 motion, Kimble alleges that his counsel was ineffective

for four reasons: (1) advising Kimble that he was "in the range of punishment within the

Federal Sentencing Guidelines in which was nowhere near factual"; (2) inducing Kimble

to sign a plea agreement by promising he would receive no more than 20 years'

imprisonment; (3) failing to request a psychiatric evaluation of Kimble; and (4) promising Kimble that he was in federal custody and his time spent there would be credited toward his sentence. The record – including Kimble's own sworn testimony during the change of plea hearing – affirmatively refutes Kimble's claims, so I will deny the motion without a hearing.

## I.     Background

Kimble and the government entered into a plea agreement that contained the following facts:

Sometime before August 2, 2010, Kimble and a codefendant discussed robbing ATM Solutions, a business that collects deposits for banks in the St. Louis area. Kimble and the codefendant discussed how to access ATM Solutions' vault and what type of weapons they would use. They conducted surveillance of the building and the employees coming and going. On August 2, 2010, other codefendants forced their way into ATM Solutions, announced a robbery, and took more than $6 million. The money was taken under a threat of violence to the two ATM employees present. The codefendants restrained the employees during the robbery, took firearms from each of the employees, and tied them up after forcing them to assist in placing the money into an ATM van. The codefendants drove to a residence, where Kimble met them. A codefendant gave Kimble between $50,000 and $55,000 of the stolen money.

Later, the robbers disputed who should get what from the robbery proceeds. A codefendant who believed he deserved more approached Kimble and another person. They developed a plan to kidnap two young women as leverage against someone who could give him more money. The women were kidnapped by force and driven to Illinois and back to Missouri a number of times over a period of thirty hours. Both young women were threatened with a firearm. One was eventually released at a gas station.

After more negotiation, an agreement was reached to exchange the other juvenile female for $15,000 in a parking lot in north St. Louis County. Kimble was responsible for delivering her. When he was alarmed by someone driving close to the exchange location, he drove off with the young woman still in the backseat. He was pursued by law enforcement, crashed his vehicle, and escaped. The young woman, as well as a firearm, were recovered from the vehicle.

In an unrelated incident on August 20, 2010, members of the St. Louis Metropolitan Police Department were looking for Kimble when they spotted him driving a Cadillac Escapade. They pursued him, but he escaped when he crashed the vehicle into a lake in Forest Park. The police recovered a firearm from the vehicle, which Kimble admitted he possessed. The firearm was examined. It was determined that it had traveled in interstate commerce before being in Kimble's possession and that Kimble had been previously convicted of a felony. (*See* Case No. 4:10CR630, Plea Agreement, Doc. 36, pp. 3–6.)

## II.     Grounds for Relief

In his § 2255 motion, Kimble asserts that his counsel was ineffective for four reasons.  He alleges:

1.     His counsel advised him that "he was in the range of punishment within the Federal Sentencing Guidelines in which was nowhere near factual."

2.     His counsel induced him to sign a plea agreement by promising he would receive no more than 20 years' imprisonment.

3.     His counsel failed to request a psychiatric evaluation for him and "instead chose to ignore the importance of that [m]itigating factor."

4.     His counsel promised him that he was in federal custody during his pre-sentencing detention and his time spent there would be credited toward his sentence.

## III.    Discussion

I will not hold an evidentiary hearing on this motion.  "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted).  "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (internal quotation marks omitted).  Here, as discussed in more detail below, I find that Kimble's claims are both inadequate and affirmatively refuted by the record before me.  I conclude that no evidentiary hearing is required.

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Kimble must prove two elements of the claim. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the ‚counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.* Second, Kimble must show that his counsel's deficient performance prejudiced the defense. *Id.* at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The court need not address both components if the movant makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

I must evaluate Kimble's claims keeping in mind that he pled guilty in the underlying criminal case. In the context of guilty pleas, a habeas petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*,

474 U.S. 52, 59 (1985); *Matthews v. United States*, 114 F.3d 112, 114 (8th Cir.1997). To the extent that Kimble's claims involve his counsel's performance regarding sentencing, he must show there is a reasonable probability that counsel's actions or inactions resulted in a sentence higher than he otherwise would have received. *See Glover v. United States,* 531 U.S. 198, 203 (2001).

I will address each ineffective-assistance-of-counsel claim in turn.

### *Sentence within Guidelines*

It is not entirely clear what Kimble's first claim is. It appears he is claiming that his counsel incorrectly informed him that he would receive a sentence within the Sentencing Guidelines for the crimes he committed. This claim is without merit. At his change of plea hearing, I asked Kimble whether he understood the maximum and minimum penalties for each crime; whether he understood that the court had the discretion to impose concurrent or consecutive sentences; and whether he understood that the court was not bound by the Sentencing Guidelines or the plea agreement's recommendations concerning the Guidelines. He affirmed that he understood each of those things. (*See* Case No. 4:10CR630, Tr. of Plea Hr'g, Doc. 59, 21:22–23:24; *see also id.* 27:14-16.) *See Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) ("defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings").

Further, Kimble *was* sentenced within – and at the low end of – the Guidelines range. (*See* Tr. of Sentencing Hr'g, Doc. 60, 23:8-13.) As such, Kimble cannot demonstrate any prejudice as a result of the allegedly incorrect information he received from his counsel. *See Pryor v. Norris*, 240 F.3d 724, 727 (8th Cir. 2001) (ineffective assistance of counsel claim fails where movant "suffered no prejudice from the alleged ineffectiveness"); *see also Engelen*, 68 F.3d at 241.

### *Promise of No More Than 20 Years' Imprisonment*

In his second claim, Kimble alleges that his attorney promised him he would be sentenced to no more than 20 years if he signed a plea agreement. The agreement itself belies this allegation. It makes clear that Kimble "fully underst[ood]" that the statutory penalties for Kimble's crimes were potentially much greater than 20 years. (*See* Plea Agreement, pp. 6–7.) The Guidelines range, as applied to the crimes at issue here and as agreed to and signed by Kimble in the plea agreement, was much higher than 20 years. In addition, the plea agreement contained the maximum penalty for each charge Kimble was facing, *see id.*, pp. 6–7, and I repeated those maximum sentences to Kimble at the plea hearing, which he acknowledged. (Tr. of Plea Hr'g, Doc. 59, 20:23–22:3.) Generally, a petitioner cannot show he was prejudiced by counsel's inaccurate sentencing advice if, before pleading guilty, he was informed of the maximum possible sentence and the court's ability to sentence

within that range. *See United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009); *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1105 (8th Cir. 2011).

Further, Kimble also has already acknowledged under oath that his counsel did not promise him a 20-year sentence. At the change of plea hearing, in addition to the questions mentioned in the previous section, I asked Kimble whether that had been "any other promises made to you to get you to plead guilty that aren't written down in this document." He said no. (Tr. of Plea Hr'g, Doc. 59, 11:18-20.) *See Nguyen*, 114 F.3d at 703.

Finally, Kimble's counsel, John Lynch, has submitted a sworn declaration that he "reviewed the applicable Guidelines with Petitioner on a number of occasions where there was never a discussion with Petitioner regarding a cap of no more than 20 years." Lynch writes that "no such suggestion was ever made." Since Kimble's conclusory allegation is not supported by any facts whatsoever, and is contradicted by his previous testimony at the plea colloquy, the plea agreement itself, and Lynch's declaration, he cannot show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

### *Psychiatric Evaluation*

Kimble alleges in his third claim that his counsel failed to request a psychiatric evaluation and "ignored the importance of that [m]itigating factor." This

conclusory allegation is not supported by any facts. Insofar as Kimble is alleging

that he was not competent to enter a guilty plea, and a psychiatric evaluation would

have revealed that fact, his testimony at the plea hearing contradicts that allegation.

(*See* Tr. of Plea Hr'g, pp. 3–4 (Kimble testifying that he was taking medication for

depression and that he "fe[lt] okay and underst[ood] what's going on here today").)

The court asked counsel whether he had any doubts as to Kimble's testimony to

proceed, and counsel said no. (*Id.* 4:14-17; *see also id.* 4:25–5:4 (Kimble testifying

that he was satisfied with his representation and his counsel had not "failed or

refused" to do anything Kimble had wanted in representing him).) *See United States

v. Turner*, 644 F.3d 713, 725 (8th Cir. 2011) ("not every manifestation of mental

illness demonstrates incompetency to stand trial"). In light of the fact that Kimble's

competency was not in question at the time, he has not demonstrated that a failure to

request a psychiatric evaluation led to any prejudice.

To the extent that Kimble alleges that a psychiatric evaluation would have led

to a shorter sentence, *see Glover,* 531 U.S. at 203, he has not even mentioned any

facts in support of this contention. At the sentencing hearing, Kimble's attorney

argued for a downward variance from the Guidelines range based on Kimble's

dysfunctional upbringing. The court relied upon a presentence investigation report

that contained information about Kimble's mental health, including current

situational depression and a history of substance abuse treatment, and considered his

"history and characteristics, in particular his very difficult childhood" in sentencing Kimble. (*See* Presentence Investigation Report, Doc. 49; Tr. of Plea Hr'g, 24:7-17.) Kimble has not presented any evidence that his counsel's failure to request a psychiatric evaluation prejudiced him in any way. *See, e.g.*, *Pryor*, 240 F.3d at 727.

### *State or Federal Custody*

Kimble was subject to state charges for the same set of facts as described herein. In his final ineffective-assistance-of-counsel claim, Kimble alleges that his attorney promised him he was in federal custody – not state custody – before sentencing, and that "all time spent incarcerated would be credited" toward his federal sentence. Kimble states that if he had known he was not in federal custody, he would not have accepted the plea agreement.

Even if he was not in federal custody, Kimble affirmed explicitly that he understood that his guilty plea did not bind the state government to anything. When I informed Kimble during the plea colloquy that there were "no promises made in this case about what might happen in any state court charges you have pending" and that the plea agreement didn't "have anything to do with any state court charges" but only bound the federal government, Kimble testified that he understood. (Tr. of Plea Hr'g, Doc. 59, 12:6–15; *see also id.* 21:25–22:3 (Kimble testifying that he understood three of his four sentences could run concurrently or consecutively).) This belies his allegation that he would not have accepted the plea agreement if he

had known that his time allegedly spent in state detention before sentencing did not count toward his federal sentence. *See Nguyen*, 114 F.3d at 703.

Further, Kimble's counsel has submitted a sworn affidavit in which he states, "Counsel understands that the State court issued its judgment and sentence to run concurrently with the federal sentence upon request. Accordingly, Counsel expects this matter to be resolved." (*See* Decl. of John Lynch, Doc. 6-1, p. 3.) Taking judicial notice of the state court docket, *see, e.g.*, *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005), it appears that the sentences are, in fact, concurrent. (*See State v. Kimble*, 1022-CR06641, Docket Entry from Sept. 29, 2011.) This renders moot Kimble's ineffective-assistance-of-counsel claim. But even if Kimble's claim were not rendered moot, he has not alleged enough to demonstrate that there is a reasonable probability that he would have decided to go to trial if he had been advised more fully about state and federal custody. *Hill*, 474 U.S. at 59.

## IV.   *Motion for Appointment of Counsel*

Kimble filed a motion for appointment of counsel. There is neither a constitutional nor a statutory right to counsel in § 2255 proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); 28 U.S.C. § 2255(g). If, as here, no evidentiary hearing is necessary, the appointment of counsel is discretionary. *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir.1994). In determining whether the appointment of counsel is necessary, the court should consider whether petitioner

has presented a non-frivolous claim, the legal and factual complexity of the case, the movant's ability to investigate and present the claim, and any other relevant factors. *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997).

Having considered the relevant factors, I do not believe that appointment of counsel is necessary in this case. Kimble's claims are meritless as conclusively demonstrated by the records of the case, his own statements to me during the plea colloquy, and her signed plea agreement. Moreover, Kimble's petition is not factually or legally complex, and he has demonstrated that he understands the issues and is capable of representing himself. For these reasons, I am denying the motion for appointment of counsel. *See Hoggard*, 29 F.3d at 472.

## V.    *Certificate of Appealability*

Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2255 proceeding unless a circuit justice or judge issues a Certificate of Appealability. To grant such a certificate, the justice or judge must find a substantial showing of the denial of a federal constitutional right. *Id.* § 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). I find that

reasonable jurists could not differ on any of Kimble's claims, so I will deny a Certificate of Appealability on all claims.

## VI.   Conclusion

For the reasons given above,

**IT IS HEREBY ORDERED** that Myron Kimble's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [#1] and his motion to appoint counsel [#3] are denied.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability, as Kimble has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Date this 18th day of June, 2014.